UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-CV-188-GFVT

CLARENCE SKINNER                                                                          PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                       DEFENDANTS

Clarence Skinner, who is presently confined in the United States Penitentiary in Terre Haute, Indiana ("USP-Terre Haute"), has filed a *pro se* civil rights complaint asserting claims under:  (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680.

This matter is before the Court for initial screening.  28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).  The Court will address the plaintiff's motion to proceed *in forma pauperis* by separate Order.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, under 28 U.S.C. §1915(e)(2), the district court can dismiss a case at any time if it determines the action:  (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

CLAIMS

The plaintiff alleges that the United States is liable to him for acts of negligence and medical malpractice its agents have committed against him with regard to a hand injury he sustained.  He also asserts claims for damages under the Eighth Amendment against the Federal Bureau of Prisons ("BOP") and "Defendants, Drs. John/Jane Doe 1-10, employed as either physicians or medical doctors at the United States Penitentiary, Big Sandy." [Complaint, p. 2]

RELIEF REQUESTED

The plaintiff seeks $10,000,000.00 in compensatory damages; $25,000,000.00 in punitive damages; trial by jury; and any other relief to which he appears entitled.

NAMED DEFENDANTS

The named defendants are:  (1) the United States of America; (2) the BOP; and (3) "Defendants, Drs. John/Jane Doe 1-10, employed as either physicians or medical doctors at the United States Penitentiary, Big Sandy."

ALLEGATIONS OF THE COMPLAINT

Between June 22, 2005, and August 21, 2006, the plaintiff was confined in the United States Penitentiary Big-Sandy ("USP-Big Sandy") in Inez, Kentucky.[1]  Plaintiff alleges that on January 5, 2005, he suffered a fracture of the fifth metacarpal of his left hand [Complaint, Record No. 1].[2]  He states in his complaint that a cast was placed over the fracture, but that

---

[1]

The plaintiff was transferred to USP-Terre Haute on or around August 21, 2006.

[2]

The plaintiff does not state if or where he was in federal custody on January 5, 2005.

on "an exact date unknown" the cast was removed despite the plaintiff's complaints of excruciating pain in his hand.

He alleges that after his arrival at USP-Big Sandy, he made several complaints about his pain to the unnamed John/Jane Doe 1-10 defendants. He alleges that he received inadequate follow-up medical treatment and therapy at USP-Big Sandy, which he describes as "gross medical negligence of defendants John-Jane Does 1-10." [*Id.*] He claims that these defendants' failure to render proper medical treatment resulted in his experiencing pain and suffering:

> "osteopenia and sequale of erasing of his left knuckle causing Plaintiff's inability to make a closed fist and severe arthritis and pain."

[*Id.*, p. 4]

## 1. FTCA Claims

The plaintiff timely filed an FTCA administrative claim for negligence, which Richard W. Schott, Regional Counsel for the BOP, acknowledged by letter dated February 13, 2006. [Attachment to Complaint] Although the plaintiff did not attach his actual FTCA administrative claim, Schott states that the plaintiff sought a sum certain of $10,000,000.00.

By subsequent letter dated May 8, 2006, Schott denied the plaintiff's FTCA claim, stating that based upon the medical reports from USP-Big Sandy, the plaintiff had received immediate treatment and evaluation of his hand injury upon his arrival at USP-Big Sandy. Schott verified in his letter that the plaintiff had arrived at USP-Big Sandy on June 22, 2005. Schott concluded his denial of the FTCA claim by stating as follows:

> Upon your arrival at USP Big Sandy on June 22, 2005, you were seen on June 29, 2005 in chronic care clinic and found to have no acute problems with your

3

left hand.  Your exam showed your inability to make a closed fist, common in the fracture of knuckles (metacarpal bones).  You were seen again August 8, 2005 and an x-ray of your hand was ordered.  The x-ray showed mild osteopenia with no evidence of acute osseous deformities.  It is common for this type of fracture to have the sequale of erasing of the knuckle, thus not being able to make a closed fist, and arthritis or pain.

We found no evidence of you having criteria to be referred to an orthopedic surgeon.

There is no indication that any negligent act or omission on the part of a Bureau of Prisons' employee was a factor in any loss you may have incurred.  Accordingly, your claim is denied.

## 2. *Bivens Claims*

The plaintiff also attached some documents which reveal that he undertook some steps toward administratively exhausting his Eighth Amendment claims (of deliberate indifference to a serious medical condition) against the BOP and the John and Jane Doe defendants, 1-10. He filed an "Attempt at Informal Resolution" (BP-8) on July 25, 2006.  [Attachment to Complaint] The plaintiff attached his "Attempt at Informal Resolution" (BP-9) filed with the warden, Suzanne R. Hastings, and he also attached Hastings' October 25, 2005 denial of his BP-9 appeal.

Hastings stated that the plaintiff had been seen by the Physicians Assistant on August 8, 2005, at which time he was prescribed medication to decrease the pain and inflammation in his left hand. On that date, the plaintiff was diagnosed with tendinitis of the left hand and fingers.  An X-ray of the plaintiff's hand was taken on August 12, 2005, which revealed no evidence of acute osseous (bone) abnormalities.  Hastings noted that the plaintiff was seen on August 18, 2005, for unrelated complaints and again on September 26, 2006, by the physician in the chronic care clinic.

4

Hastings concluded that the plaintiff's condition fell under "Medically Acceptable-Not Always Necessary" category under BOP Program Statement 6031.01, *Patient Care*. Although the plaintiff could be considered for elective procedures, Hastings did not find that a referral to a specialist was necessary. She determined that the Health Services Unit had provided the plaintiff with appropriate medical care for his condition

The plaintiff then filed an appeal (BP-10) to the BOP's Mid-Atlantic Regional Office ("MARO") on or about November 2, 2005. He did not attach any additional paperwork from the MARO, but apparently the MARO denied his claim. The plaintiff apparently filed his last appeal (BP-11) with the BOP's Central Office, which rejected that appeal on January 10, 2006. The plaintiff's continuation page was two pages, instead of one, and therefore did not comply with the filing requirements. Plaintiff was given 15 days in which to correct his filing and submit a new BP-10.

Apparently the plaintiff failed to act within the prescribed fifteen-day period, because the next attachment to the complaint consists of denial from the Central Office, dated March 14, 2006. That denial states that the Central Office did not receive the plaintiff's revised BP-11 appeal until March 6, 2006. The Central Office's notice states, "Your appeal was due on 01-25-06. You will need staff verification on BOP letterhead to document that your untimeliness was not your fault."

## DISCUSSION
### 1. Failure to Exhaust *Bivens* Constitutional Claims

To the extent the plaintiff asserts Eighth Amendment claims of deliberate indifference against the unnamed John and Jane Doe defendants, he has failed to properly exhaust that

claim.  He failed to fully and properly comply with the last step of the BOP's administrative process; to wit, he failed to timely file his BP-11 appeal with the BOP's Central Office.

Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9].  *See* §542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11].  *See* §542.15.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies before suing in federal court.  *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit based on inadequate conditions of confinement).

The United States Court of Appeals for the Sixth Circuit has held that the PLRA means what it says, expressly requiring exhaustion of administrative remedies before the bringing of new actions.  *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 118 S. Ct. 263 (1997).  The Sixth Circuit has held that it is contrary to Congress's intent, in enacting

the PLRA, to allow inmates to bypass the exhaustion requirement by waiting until their administrative remedies are time-barred. *Wright v. Morris*, 111 F.3d at 417 n.3.

Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court is required to dismiss without prejudice claims which have not been dismissed. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6ᵗʰ Cir.), *cert. denied*, 119 S. Ct. 88 (1998).  The burden is on the plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit. *Id.*

Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it.  For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).[3]  Exhaustion is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d at 879, even if proceeding through the administrative system would be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir.1999).

Mere allegations of compliance with grievance procedures, unsupported by documentary proof, are inadequate to demonstrate efforts or attempts to comply with the administrative remedy process.  In *Wyatt v. Leonard*, the court concluded that the plaintiff in that case had made an adequate showing that he had attempted to comply with administrative remedies, because the plaintiff had attached numerous letters he had filed and

---

[3]

*See also* unpublished opinions about the impermissibility of prisoners short-circuiting the system, alleging the futility of going further, and asking the court to rule they had done enough: *McRae v. Corrections Corp. of America*, 208 F.3d 214, 2000 WL 302772 (6th Cir. March 27, 2000); *Fisher v. Wickstrom*, 230 F.3d 1358, 2000 WL 1477232 (6th Cir. Sept. 25, 2000).

7

other persuasive documents.  Moreover, exhaustion means proper exhaustion, *i.e.*, under the terms of and according to the *time* set by BOP regulations.  *See Woodford v. Ngo*, --- U.S. ----, 126 S. Ct. 2378, 2387-88, 165 L. Ed.2d 368 (2006).

Here, the plaintiff's attachments to his complaint clearly reveal that he did not file his corrected BP-11 appeal with the Central Office until March 6, 2006, over a month after the due date of January 25, 2006.  He filed nothing to indicate that his failure to do so was the fault of the BOP, and not his own. The Eighth Amendment claims against the John and Jane Doe Defendants 1-10 will be dismissed without prejudice to the plaintiff demonstrating to the BOP Central Office that his untimely BP-11 appeal was not his fault.

2.  *Bivens* Claims Against United States and Federal Agencies

To the extent that the plaintiff seeks monetary damages from the United States and the BOP, a federal agency, that claim also fails.  Federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity."  *United States v. Testan*, 424 U.S. 392 (1976); *see also Will v. Michigan Dept. of State Police*, 109 S. Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. at 166.  The United States has not waived its sovereign immunity to monetary damages for constitutional torts.

Similarly, a lawsuit against an agency of the United States is, in essence, a suit against the United States.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The BOP is a federal agency.  "Federal agencies may not be sued *eo nomine* except as authorized by Congress in 'explicit language.'"  *Castleberry v. Alcohol, Tobacco & Firearms Div.*, 530 F.2d, 673 n.3 (5th Cir. 1976) (citing *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S. Ct. 410, 411 (1952));

*Brooks v. Graber*, 2000 WL 1679420 (D. Kan. November 6, 2000) (no authorization existed to name the Department of Justice because it cannot be sued *eo nomine* as a defendant; moreover, plaintiff's claims were barred by sovereign immunity and/or failure to state a claim of relief). The plaintiff's *Bivens* claims for damages against the United States and the BOP will be dismissed with prejudice.

### 3.  FTCA Claims

The record requires more development in order to assess the validity of the plaintiff's FTCA claims.  The United States will be required to answer on the issue of the FTCA claim.

### CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The plaintiff's Eighth Amendment *Bivens* claims against the John and Jane Doe Defendants (1-10) of the BOP are **DISMISSED WITHOUT PREJUDICE**.

(2)     The plaintiff's Eighth Amendment *Bivens* claims against the BOP and the United States of America are **DISMISSED WITH PREJUDICE**.

(3)     The Clerk of the Court is directed to reclassify this action as one falling solely under the FTCA, Title 28 U.S.C. §§1346(b), 2761-2680.

(4)     The United States is directed to filed a response to the plaintiff's FTCA claims of negligence and/or medical malpractice.

(5)     The Pikeville Clerk is directed to issue summons for the Attorney General of the United States of America and for the United States Attorney for the Eastern District of Kentucky.

(6)     The Pikeville Clerk's Office shall prepare as many copies of the complaint as there are summonses issued and complete the requisite number of USM Form(s) 285.

(a)     If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(b)     The Pikeville Clerk's Office shall forward by certified mail the following documents:  (i) the summonses issued; (ii) the requisite number of USM Forms 285; (iii) the requisite number of complaint copies; (iv) the requisite number of copies of this Opinion and Order; and (v) any other documents necessary to effectuate service.

(c)     The Pikeville Clerk's Office shall enter the certified mail receipt into the  record and a notation that the delivery to the USM Office of the complaints, summonses, USM Forms 285, and any other attachments have been effectuated, and the date upon which they were effectuated.

(d)     The USM Office shall serve a summons, complaint copy, and copy of this Order on the defendants to this action; service to be made by certified mail, return receipt requested, or by personal service.

(e)     The USM Office shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(7)     The plaintiff shall keep the Clerk of the Court informed of his current mailing address.  **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(8)     For every further pleading or other document he wishes to submit for

10

consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance

has been entered by counsel, upon each attorney, a copy of the pleading or other document.

The plaintiff shall send the  original papers to be filed with the Clerk of the Court together

with a certificate stating the date a true and correct copy of the document was mailed to each

defendant or counsel.  **If a District Judge or Magistrate Judge receives any document**

**which has not been filed with the Clerk, or which has been filed but fails to include the**

**certificate of service of copies, the document will be disregarded by the Court.**

This 26th day of September, 2006.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge