NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 06-CV-188-GFVT

CLARENCE SKINNER                                                                                   PLAINTIFF

VS:                                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                                                   DEFENDANT

   This matter is before the Court, *sua sponte*, for consideration of the "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [Record No. 22] filed by the defendant, the United States of America.  Clarence Skinner, the *pro se* plaintiff, has not responded to the Motion to Dismiss/Summary Judgment.

   On February 2, 2007, the Court entered an Order [Record No. 24] directing the plaintiff to show cause why his claims against the defendant should not be dismissed. Skinner then filed pleadings stating that he had never received a copy of the United States' Motion and asked the Court to direct the United States to send him another copy via certified mail [*see* Record Nos. 26 and 27].

   In response to Skinner's motion, the Court entered an Order on March 6, 2007, in which it directed counsel for the United States to take the following action:  (1) serve another copy of its Motion to the plaintiff by way of regular United States mail; and (2) certify in the

record the date on which it had re-mailed the copy of the Motion to the plaintiff [Record No. 28, ¶¶ 2-3].[1]

The Court further informed the plaintiff in the Order that it would consider granting the Motion and dismissing his claims for want of prosecution if he did not respond to the Motion to Dismiss/Summary Judgment [*Id.*, ¶5]. The Court warned the plaintiff that he had fifteen days from the date of entry of that Order in which to respond.

The record reflects that on March 6, 2007, the Clerk of the Court mailed a copy of the Order to the plaintiff's most recent address listed of record in this case, being: Clarence Skinner #009576-007, United States Penitentiary, P.O. Box 12015, Terre Haute, Indiana, 47801 [*see Id.* (Attachment: Clerk's Notation)]. The plaintiff has taken no effort to inform this Court of any new or updated mailing address.

The United States Postal Service has not returned this mailing to the Clerk of the Court. The fifteen days (plus an additional three days for mailing as provided by Fed. R. Civ. P. 6) granted to the plaintiff in the Order have expired, and the plaintiff has not responded. The Court will therefore examine the underlying Motion to Dismiss/Summary Judgment in the absence of a response from the plaintiff.

## DISCUSSION
### 1. Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[1] The United States filed its Certificate of Service the following day, on March 7, 2007 [Record No. 29].

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id*. at 322-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of

3

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id*. "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

Even when a non-movant fails to respond to a motion for summary judgment, the district court must still "examine the movant's motion . . . to ensure that he has discharged [his] burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Here, Plaintiff Skinner has filed no response to the Motion to Dismiss/Summary Judgment.

The Sixth Circuit accepts a verified complaint, to the extent that it is based on personal knowledge, as an opposing affidavit within the meaning of Fed. R. Civ. P. 56(e). *See Hooks v. Hooks*, 771 F.2d 935, 945-46 $^{th}$ Cir. 1985). Accordingly, the Court will consider the complaint and the plaintiff's other filings as a collective response to the motion for summary judgment.

PROCEDURAL HISTORY
1. The Complaint

The plaintiff alleged that members of the medical staff of two federal prisons committed acts of negligence and medical malpractice against him. The plaintiff was incarcerated in FCI-Cumberland on January 5, 2005, when he was involved in a fist fight with another inmate. During the altercation, the plaintiff fractured the fifth metacarpal (knuckle) bone of his left hand. A cast was placed on the plaintiff's left hand to immobilize the metacarpal and to allow the bone fracture to heal. The cast was removed three months later. The plaintiff contends in his complaint that the cast was removed too soon. He alleges that when the cast was removed, he was still experiencing pain in his hand.

On June 22, 2005, Plaintiff was transferred to United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky.[2] He alleges that after his arrival at USP-Big Sandy, he made several complaints about his pain to the unnamed John and Jane Doe defendants. He alleged that he received inadequate follow-up medical treatment at USP-Big Sandy.

The plaintiff alleges that because the medical staff at either FCI-Cumberland and/or USP Big Sandy committed medical malpractice in treating his hand, he suffers from osteopenia (loss of bone density). He alleges that he is unable to make a closed fist

---

[2] The plaintiff was transferred to the United States Penitentiary in Terre Haute, Indiana ("USP-Terre Haute") on or around August 21, 2006.

5

and that he suffers from severe arthritis and pain. Plaintiff seeks $10,000.00 in compensatory damages and $25,000,000.00 in punitive damages from the United States.[3]

## 2. Motion to Dismiss/Summary Judgment

The United States has asked the Court either to dismiss the plaintiff's FTCA complaint or to enter summary judgment against the plaintiff [Record No. 22]. In support of its Motion, the United States has attached the Declaration of Richard Ramirez, M. D. [Record No. 22-3]. Ramirez is the Clinical Specialty Consultant for the Federal Bureau of Prisons ("BOP"). As the Acting Clinical Director at USP-Big Sandy, Dr. Ramirez states that he has personal knowledge about the plaintiff's medical history.

Dr. Ramirez states that within seven days of being transferred to USP-Big Sandy, the plaintiff was examined in the chronic care clinic at the prison [Ramirez Decl., Record No. 22-3, ¶ 3]. Dr. Ramirez acknowledged that the plaintiff had trouble making a closed fist, which is common in fractures of the metacarpal (knuckle) bones [*Id*.]. Plaintiff was seen again by USP-Big Sandy medical staff on August 8, 2005. According to Dr. Ramirez, the plaintiff's hand showed no evidence of swelling or discoloration on August 8, 2005 [*Id*., ¶ 4].

---

[3] On September 28, 2006 the Court dismissed the plaintiff's Eighth Amendment claims asserted under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). [*See* Memorandum Opinion and Order, Record No. 4] In that Order, the Court allowed the plaintiff's claims under the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680, to proceed.

Dr. Ramirez states that the plaintiff's hand was found to have adequate capillary refill and intact sensory response [*Id*.]. Plaintiff was prescribed oral anti-inflammatory medications, and an x-ray of his left hand was ordered in response to Plaintiff's complaints of discomfort [*Id*.].

Dr. Ramirez states that the x-ray found mild osteopenia (loss of bone density), unrelated to the fracture, and no evidence of any acute osseous deformities resulting from the fracture [*Id*.]. He further asserts that recent medical records show that the plaintiff's left hand has subsequently healed [*Id*., ¶ 5].

Dr. Ramirez states that an x-ray performed on April 20, 2006, showed a healed, angulated, and shortened left 5th metacarpal fracture [*Id*.]. He states that according to the results of an examination of the plaintiff by the Clinical Director at his current institution, USP-Terre Haute, reveal that the plaintiff has retained the ability to close his left fist ninety-five percent, with no obvious pain.

Dr. Ramirez notes that the plaintiff does complain of pain when he grips his left fist tightly. He notes that the plaintiff has partial limitation of motion of his left fifth metacarpal due to the shortening deformity [*Id*.]. Dr. Ramirez explains that the shortening condition appears permanent in nature [*Id*.]. He further explains that a shortening deformity of the fifth metacarpal of the hand, with retention of the majority of the functioning of the hand, is a medically-acceptable outcome after a fracture of the fifth metacarpal [*Id*., ¶ 6].

Dr. Ramirez states that the hand is "a complex mesh of bones, connective tissue and nerves, and some limited degree of impairment after recovery from a bone fracture is not atypical. The goal after any fracture of the bones in the hand is to regain primary functioning of the hand." [*Id.*, ¶ 7]

Dr. Ramirez contends that the plaintiff received the necessary and proper medical treatment for his injury. He explains that the location of the fracture on his fifth metacarpal precluded the use of any pins or other securing devices, so the cast was correctly applied to the injured hand [*Id.*]. He argues that the plaintiff received the necessary rehabilitative therapy after the cast was removed.

As for the plaintiff's current status, Dr. Ramirez concludes that the plaintiff has primary functioning of the left hand after removal of the cast, "which medical staff consider an acceptable outcome given the nature of his fracture. He has regularly been employed at a number of jobs at the institutions in which he has been incarcerated since injuring the hand. Currently, he is working as a compound orderly at USP Terre Haute." [*Id.*, ¶ 8]

DISCUSSION
1. <u>FTCA Legal Standards</u>

The FTCA waives the federal government's sovereign immunity for tort actions. *See* 28 U.S.C. §2671, *et. seq.* "[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier, Inc*. v. U.S., 352

U.S. 315, 319, 77 S. Ct. 374 (1957). Thus, in order for the plaintiff to state a cognizable claim under the FTCA, Kentucky tort law must be applied. *See Rayonier Inc. v. United States*; *Flechsig v. United States*, 991 F.2d 300, 303 (6 Cir. 1993); 28 U.S.C. §1346(b)(1) ("liable to the claimant in accordance with the law of the place where the act or omission occurred").

To successfully allege a negligence claim pursuant to Kentucky law, a plaintiff must prove three things: (1) a legal duty owed to him by the United States, (2) a breach of that legal duty, and (3) an injury directly caused by that breach. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky.1992); *Rich for Rich v. Kentucky Country Day, Inc.*, 793 S.W.2d 832, 834 (Ky. Ct. App.1990) (citing *M. & T. Chemicals, Inc. v. Westrick*, Ky., 525 S.W.2d 740 (1974)).

A plaintiff alleging medical malpractice in Kentucky must prove that a medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the plaintiff injury. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky.1982); *Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky.1970). Generally, expert testimony is required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's injury. *See Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996); *Jarboe v. Harting*, 397 S.W.2d 775, 777-78 (Ky. 1965).

A plaintiff must show the challenged treatment was a deviation below the applicable standard of care required and expected of a reasonably competent practitioner; and, secondly, the alleged negligent act proximately caused the claimed injury. *Reams v. Stutler*, 642

S.W.2d at 588 (Ky. 1982); *Williams v. Tarter*, 151 S.W.2d 783 (Ky. 1941).

As the defendant notes, Kentucky employs the "substantial factor" test in matters of causation and proximate cause. *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980). In *Deutsch*, the court, citing *Restatement of Torts, Second*, §431, further defined "substantial cause" as follows:

> . . . In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. (T)his is necessary, but is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause. . . .

*Id*. at 144.

Medical malpractice claims in Kentucky "must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with a general knowledge would have no difficulty recognizing it." *Oliver v. United States*, 2005 WL 2994307, *2 (W. D. Ky. 2005) (Not Reported in F. Supp. 2d) (citing *Harmon v. Rust*, 420 S.W.2d 563, 564 (Ky.1963). Kentucky courts squarely place "the burden of proof upon the plaintiff to prove the negligence of the physician ... and that such negligence was the proximate cause of [the] injury and damages." *Stacey v. Williams*, 253 Ky. 353, 69 S.W.2d 697, 705 (Ky. 1934).

### 2. Standards Applied to Facts

The Court must agree with the United States that the plaintiff has failed to prove a deviation in the standard of care regarding his medical treatment. Dr. Ramirez's Declaration

establishes that the plaintiff did, in fact, receive all proper and necessary medical care in conformity with the appropriate medical standards.  Plaintiff received proper medical care not only at FCI-Cumberland, but also at USP-Big Sandy.  As evidenced by the numerous medical records attached to the United States' motion, the plaintiff received ongoing and substantial medical attention for his injury (such as prescriptions and anti-inflammatory drugs, rehabilitation, x-rays, and follow-up examinations).  The extent of his treatment exceeded that which some persons who are not incarcerated receive.

Dr. Ramirez's Declaration notes that the treatment rendered to the plaintiff was standard and consistent with the protocol for a fracture of the fifth metacarpal.  As Dr. Ramirez notes, the plaintiff's hand was placed in a cast to enable the hand to immobilize and heal.  Of relevance is the fact that due to the location of the fracture, the medical staff at FCI-Cumberland could not use pins or other securing devices, only a cast.  Dr. Ramirez states that use of a cast is standard procedure for this type of fracture.  Plaintiff offers nothing to refute that claim, other than his self-serving assertions in his complaint that the prison medical staff did not treat his injury properly.  The medical notes reveal that the plaintiff was thereafter continuously evaluated on a follow-up basis.

The United States notes that the plaintiff complains of being unable to close his hand and also complains of pain.  Absent any medical proof from the plaintiff to the contrary, the Court agrees that these after-effects are to be expected, given the nature of the fracture, and could not be avoided despite following the standard course of treatment.

The Court agrees with the United States that the other manifestation about which the plaintiff complains, the shortening deformity of the fifth metacarpal, is a medically acceptable outcome for this type of injury.  As a trained physician, Dr. Ramirez has explained to the Court that after sustaining a fracture of this type, some degree of limited impairment is not atypical and is to be expected.  In summary, the United States asserts that the problems and limitations about which the plaintiff complains were unavoidable and were not occasioned by negligence on the part of either federal prison's medical staff.

The plaintiff offers no medical proof which would contradict Dr. Ramirez's conclusions that causation was lacking.  Dr. Ramirez explains that the use of the cast and the period of immobilization was the proper medical course to follow.  He explains that shortening deformity of the fifth metacarpal was unavoidable and was a medically accepted outcome.

Based upon Dr. Ramirez's Declaration, the Court agrees and finds that the medical treatment given to the plaintiff did not cause the limitations about which he now complains. "Negligence, under Kentucky law, requires a showing of duty, breach of duty, and resulting injury." *Smith v. Franklin County*, 227 F. Supp.2d 667, 682 (E .D. Ky. 2002).  Given Dr. Ramirez's opinion that the limitations about which the plaintiff complains could not be avoided, the Court cannot conclude that the prison medical staff's treatment was a *substantial factor* in the causation of the current problems. *See Deutsch v. Shein*, 597 S.W. 2d at 144.

The Court's finding on this issue is also reinforced by the United States' claim that the plaintiff has been employed at a number of jobs at various federal prisons where he has been

incarcerated since he was injured. Again, the plaintiff has not refuted this claim--or any other claim raised in the United States' motion--despite an opportunity to do so. His failure to address this issue detracts from his argument that he has sustained a serious impairment to his hand. At best, the plaintiff's complaint offers nothing more than a self-serving assertion that he has been the victim of medical malpractice, unsubstantiated by even a scintilla of medical proof.

Given these facts, the Court cannot conclude that the medical problems which the plaintiff may be experiencing were the result of any act of negligence or medical malpractice caused by the medical staffs of the various prisons where the plaintiff has been confined.

The plaintiff has failed to prove the elements of a *prima facie* case medical negligence, under Kentucky law. Under Fed. R. Civ. P. 56 and *Celotex*, there is no genuine issue of material fact on the issue of medical malpractice. Summary judgment is warranted and will be granted.

## CONCLUSION

Accordingly, the Court being duly and sufficiently advised, **IT IS ORDERED** as follows:

(1) The "Motion to Dismiss or in the Alternative, Motion for Summary Judgment" filed by the United States of America [Record No. 22] is **GRANTED**.

(2) This action is **DISMISSED WITH PREJUDICE** and Judgment shall be entered contemporaneously with this Order in favor of the United States of America.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the United States of America.

This the 30th day of March, 2007.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge